UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| FOREFRONT MACHINING TECHNOLOGIES, INC., | : : : |
| Plaintiff, | : Case No. 3:19-cv-383 : |
| v. | : Judge Thomas M. Rose : |
| SARIX SA, *et al.*, | : : |
| Defendants. | : : |

**ENTRY AND ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT ALOUETTE TOOL COMPANY LTD.'S REQUEST FOR HEARING ON ORDER OF ATTACHMENT AND MOTION TO DISCHARGE ATTACHMENT (DOC. 5)**

Pending before the Court is the Motion to Discharge Attachment (Doc. 5) (the "Motion") filed by Defendant Alouette Tool Company Ltd. ("Alouette").[1] Plaintiff Forefront Machining Technologies, Inc. ("Forefront") filed a memorandum opposing the Motion (the "Response"). (Doc. 8; *see also* Doc. 1-5 at PAGEID # 356-369.) Alouette filed a reply brief in support of the Motion (the "Reply"). (Doc. 9.) On January 6, 2020, Defendant Silfex, Inc. ("Silfex") filed a Notice of Amounts Owed to Defendant Alouette Tool Company.[2] (Doc. 13.) Also, on January 6,

---

[1] Alouette originally filed the Motion in the Montgomery County Court of Common Pleas prior to removal to this Court. (*See* Doc. 1-5 at PAGEID # 341-51.) As shown in the full title of the Motion (Defendant Alouette Tool Company Ltd.'s Request for Hearing on Order of Attachment and Motion to Discharge Attachment), the Motion also requested a hearing on this matter. On November 21, 2019, prior to removal, Hon. Dennis J. Adkins of the Montgomery County Court of Common Pleas set the matter for hearing on January 23, 2020. (*Id.* at PAGEID # 354-55.) On December 27, 2019, following removal to this Court and a conference with counsel who had appeared, this Court set a hearing for January 22, 2020. (*See also* Doc. 9 at PAGEID # 687 (Alouette renewing its request).)

[2] On December 27, 2019, the Court made an entry on the docket (following a conference with counsel who had appeared) indicating that, on or before January 8, 2020, Defendants Silfex and SARIX SA ("SARIX") could file, if they chose to do so, a brief concerning the issues raised in the briefing on the Motion. (*See* 12/27/2019 Minute Entry.) Neither party filed such a brief. The Court notes that there is an ongoing dispute over whether SARIX has been served with a summons and complaint in this case. (*See* Doc. 16.) Based on the evidence presented and applicable legal standards, and given the particular circumstances of this case, the Court finds that whether SARIX has been served does not alter the Court's findings in this Order or its ruling on the Motion.

1

2020, the Court issued a document identifying questions or areas that it wanted the parties to address either at the evidentiary hearing or in evidentiary submissions made prior to the hearing.[3] (Doc. 14.) On January 22 and February 3, 2020, the Court held an evidentiary hearing on the Motion. On January 31, 2020, Alouette submitted a stand-alone affidavit of David Brogan, Alouette's President ("Mr. Brogan"). (Doc. 23.) On February 10, 2020, Forefront and Alouette each filed post-hearing briefs. (Docs. 30 and 31.) The Motion is fully briefed and ripe for review.

For the reasons discussed below, the Court **GRANTS, IN PART, AND DENIES, IN PART,** the Motion. The Court denies Alouette's request to discharge the attachment, but grants Alouette's alternative request to modify the Attachment Order. The Court modifies the Attachment Order as set forth in the Conclusion section, below.

I. **BACKGROUND**

Forefront alleges in its Verified Complaint ("Complaint") that, in or around February of 2015, it entered into an oral agreement with SARIX and Alouette. (*See* Doc. 4.) The alleged agreement included that SARIX and Alouette would pay Forefront a commission of 10% upon any sales made as a result of Forefront's efforts, contacts, knowledge, and labor. (*Id.*) Forefront alleges that it performed under the agreement, securing Silfex as a customer for SARIX and Alouette and procuring the sales of at least 23 machines to Silfex. (*Id.*) However, according to Forefront, SARIX and Alouette failed to pay all of the amounts owed.

A letter on SARIX letterhead dated February 2, 2017 from SARIX and Alouette to Paul Nold of Forefront (the "Termination Letter") states:

> Dear Mr. Nold,
>
> We would like to clarify the relationship between Sarix and your company, as discussed during the last meeting of our visit in December 2016 and agreed between

---

[3] On January 29, 2020, Forefront and Alouette each submitted a brief concerning joint and several liability, one of the items raised in the Court's January 6, 2020 filing. (Docs. 20 (amended by Doc. 22) and 21.)

> Sarix and Alouette Tool Inc. as follows.
>
> Forefront Inc. and Paul Nold are no longer representative [sic] of Sarix in the Ohio area.
>
> Alouette Tools is Sarix [sic] sole agent in the United States.
>
> Alouette Inc recognize [sic] to Paul Nold, for the acquisition of the Silfex purchase order following [sic] commissions
>
> for machine #3 – 10% of the order amount
>
> for machine #4 and 5 – 8% of the order amount
>
> for machine #6 to #13 – a finder fee of 3% of the order amount
>
> These commissions are due when each machine has been completely paid by the customer.
>
> Commissions for machine #1 and #2 have already been paid.
>
> …
>
> No further business is planned between Paul Nold / Forefront and Alouette / Sarix.
>
> We remain at your disposal for any additional information that may be needed. We thank you very much for the cooperation. ….

(Defendant's Exhibit 10.) The Termination Letter is signed by SARIX representatives and Mr. Brogan (from Alouette). (*Id.*) Approximately two-and-a-half years later, on September 18, 2019, Forefront's counsel sent a letter to representatives for SARIX and Alouette demanding payment for commissions allegedly owed to Forefront (the "Demand Letter"). (Defendant's Exhibit 7.) Forefront argues that, as a matter of Ohio law, the unilateral termination shown in the Termination Letter does not release SARIX and Alouette from their obligation to pay Forefront the commissions it (allegedly) earned[4] and that their failure to pay Forefront violates Ohio statutory and common law. (*See* Doc. 4.)

---

[4] Forefront alleged in the Complaint that it estimates Silfex has purchased an additional 15 to 25 machines—beyond the 23 machines specified—because of work that Forefront did prior to termination of the agreement. (*See* Doc. 4 at PAGEID # 400.) However, evidence submitted to the Court demonstrates that there have yet to be any SARIX machines purchased by Silfex beyond those 23 machines and that Silfex's last order was in February 2018.

3

The Complaint alleges six causes of action against SARIX and Alouette: (1) violation of Ohio Revised Code ("O.R.C.") § 1335.11; (2) breach of contract; (3) promissory estoppel; (4) unjust enrichment; (5) equitable lien (also against Silfex); and (6) declaratory judgment (also against Silfex). (Doc. 4.) Forefront acknowledged to the State Court that Silfex is merely "a nominal defendant in this action solely for purposes of attaching money that may become due and owing to Defendant" SARIX. (Doc. 6 at PAGEID # 670.)

On November 1, 2019, Forefront filed the Complaint, along with a motion for pre-judgment attachment, in the Montgomery County Court of Common Pleas. (Doc. 4; Doc. 1-4 and 1-5 at PAGEID # 291-326.). Attached to the motion for pre-judgment attachment was an Affidavit from Paul Nold, Forefront's President ("Mr. Nold"). (Doc. 1-4 at PAGEID # 307-26.) That same day, Hon. Dennis J. Adkins of the Montgomery County Court of Common Pleas entered an Order granting Forefront's motion for pre-judgment attachment (the "Attachment Order"). (Doc. 1-5 at PAGEID # 327-330.) The Attachment Order was entered *ex parte*, without providing prior notice to the Defendants or conducting a hearing. It states, in part, the following:

> Upon consideration of Plaintiff's Motion for Pre-judgment Attachment, with affidavits attached, and pursuant to Ohio Revised Code § 2715.45, and for good cause shown, the Court hereby finds that there is probable cause to support Plaintiff's Motion for Pre-judgment Attachment and that Plaintiff will suffer irreparable injury if the Order for Pre-Judgment Attachment is delayed until the Defendants against whom the motion has been filed have been given the opportunity for a hearing. … Any authorized levying officer … shall attach the following property of the Defendants: moneys in the possession or control of Silfex, Inc., located at 950 South Franklin St. Eaton, Ohio 45320, that is or will be due to be paid to SARIX and/or Alouette for the purchase of SX200L machinetool Nos. 20 through 23. Such officer shall attach this property by delivering a copy of the Order to Silfex. Silfex may deliver the attached proceeds to the Court as they become due to be held in escrow or Silfex may hold those proceeds in escrow itself until further order of This Court. … The property subject to this Order of pre-judgment attachment can be recovered by the Defendants by the filing of a bond pursuant to Ohio Revised Code § 2715.10 or 2715.26. Plaintiff is not required to file a bond in this case because the Defendants against whom the motion has been filed are not residents of this state and are foreign corporations.

4

(Doc. 1-5 at PAGEID # 327-30.)

Thus, the Attachment Order does not specify a dollar figure for attachment, but rather attaches all "moneys" in the possession or control of Silfex due, or will be due, to be paid to SARIX and/or Alouette for the purchase of Machines 20, 21, 22, and 23.[5] According to Silfex's January 6, 2020 Notice, that is equivalent to $1,212,963.80. (Doc. 13.)

On November 3, 2019, counsel for Forefront filed a Praecipe asking the Clerk of the Court for the Montgomery County Court of Common Pleas to issue to the Defendants copies of Forefront's motion for pre-judgment attachment (with its attached affidavit), the Attachment Order, and a notice that an order of attachment was issued and defendants had the right to a hearing on the matter. (Doc. 1-5 at PAGEID # 336-38.) On November 4, 2019, that Clerk of the Court issued a Notice and Request for Hearing Form. (Doc. 1-5 at PAGEID # 331-35.) On November 13, 2019, Alouette filed the Motion in State Court. (Doc. 5.) On December 3, 2019, after the State Court had set a hearing, but before ruling on the Motion, Alouette removed the case to this Court.[6] (Doc. 1.)

Alouette attached affidavits from Mr. Brogan (its President) to the Motion and the Reply. (Doc. 5 at PAGEID # 667-668; Doc. 9-1 at PAGEID # 696-97.) Mr. Brogan testified that Alouette is a distributor for SARIX in the United States. (Doc. 5 at PAGEID # 667.) His affidavits demonstrate that Alouette is a relatively small entity with "average annual revenue from sales within the United States rang[ing] from $3.5 million to $5.5 million," liquid assets in the U.S. in excess of $300,000, and total assets in the U.S. in excess of $800,000. (*Id*. at PAGEID # 668.) Silfex's January 6, 2020 Notice states that, once Silfex receives and accepts all of the machines, it

---

[5] Silfex ordered those four machines more than a year after the Termination Letter. (*See* Doc. 5 at PAGEID # 668.)
[6] The Court notes that Mr. Brogan testified that SARIX is aware of the lawsuit, that he has spoken to SARIX representatives about it, and that SARIX is aware of the Attachment Order.

will owe a total of $1,212,963.80 to be paid "to Alouette." (Doc. 13.)

   II.   **ANALYSIS**

In the Motion, Alouette requests that the Court discharge or modify the Attachment Order. (Doc. 5 at PAGEID # 658.) Alouette argues that the Attachment Order should be discharged or modified for two reasons: (1) Forefront does not face a threat of irreparable harm; and (2) Forefront has not demonstrated probable cause for the attachment. (*Id.*) Conversely, Forefront argues that the Attachment Order should remain in place, as is. (Doc. 8 at PAGEID # 673.)

   A. **Standards for Discharging or Modifying an Attachment Order**

Federal Rule of Civil Procedure 64 provides, in part, that, "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." FED. R. CIV. P. 64.[7] "Ohio permits attachment against a defendant's property 'in a civil action for the recovery of money, at or after its commencement,' upon any of the grounds specified in" O.R.C. § 2715.01. *Swartz v. Di Carlo*, No. 1:12CV3112, 2014 WL 1493352, 2014 U.S. Dist. LEXIS 51933, at *3 (N.D. Ohio April 15, 2014) (quoting O.R.C. § 2715.01).

In obtaining the Attachment Order, Forefront relied on sections (A)(1), (A)(2), and (B) as grounds for attachment under O.R.C. § 2715.01. (Doc. 1-4 at PAGEID # 297-99.) The statute at those sections states the following:

> (A) An attachment against the property … of a defendant may be had in a civil action for the recovery of money, at or after its commencement, upon any one of the following grounds:

---

[7] Rule 64 excepts from its scope those situations in which federal law governs the availability of the remedy, but the Court is unaware of any applicable federal statutes that would govern here. *See also Data Processing Scis. Corp. v. Lumenate Techs., L.P.*, No. 1:16-cv-295, 2016 WL 3144117, 2016 U.S. Dist. LEXIS 73385, at *5 (S.D. Ohio June 6, 2016) ("Since there is no controlling federal statute, Ohio federal courts apply Ohio law to determine if prejudgment attachment is appropriate") (internal quotation marks omitted).

> (1) Excepting foreign corporations which by compliance with the law therefore are exempted from attachment as such, that the defendant or one of several defendants is a foreign corporation;
>
> (2) That the defendant is not a resident of this state; …
>
> (B) An attachment shall not be granted on the ground that the defendant is a foreign corporation or not a resident of this state for any claim, <u>other than a debt or demand arising upon contract</u>, judgment, or decree, or for causing damage to property or death or personal injury by negligent or wrongful act.

O.R.C. § 2715.01(A)(1), (A)(2), and (B) (emphasis added).

Ohio statutes contain various requirements in order to obtain an attachment order. *See, e.g.,* O.R.C. §§ 2715.03, 2715.01, 2715.043, 2715.011, 2715.045. Among other things, the party seeking attachment must set forth in an affidavit the nature and amount of its claim, as well as a description of the property it seeks to be attached and the approximate value of such property (if known). O.R.C. § 2715.03(A), (C). Assuming that a court decides to order pre-judgment attachment, this information is considered in determining the amount of a defendant's property to be attached. *Id.*; O.R.C. §§ 2715.045(E), 2715.011(A); *Data Processing*, 2016 U.S. Dist. LEXIS 73385, at *8; *Stifel Fin. Corp. v. Iannarino*, No. 2:18-cv-1223, 2018 WL 6288020, 2018 U.S. Dist. LEXIS 204085, at *2-3, 12 (S.D. Ohio Dec. 3, 2018) (granting motion for pre-judgment attachment and attaching $450,000 in defendant's account, where plaintiff claimed it had transferred $450,000 to defendant for a loan, but defendant had not repaid any of the amounts due); *Ravens Metal Prods, Inc. v. The Harrett Corp.*, No. 91AP100080, 1992 WL 127151, 1992 Ohio App. LEXIS 2629, at *5 (Ohio Ct. App. May 19, 1992) (remanding matter to trial court where facts presented suggested that the pre-judgment attachment may have overreached the amount of the asserted claim); *Schofield v. Benton*, No. 92AP-161, 1992 WL 208924, 1992 Ohio App. LEXIS 4275, at *12 (Ohio Ct. App. Aug. 20, 1992) ("Statutes authorizing prejudgment attachment of property present a careful balance between the need of creditors for a means to enforce their rights

and the constitutional protection of debtors against deprivation of property without due process"). Additionally, "Ohio's attachment statutes apply to property located within its territorial boundary." *Ashton Park Apartments, Ltd. v. Lebor*, 252 F. Supp. 2d 539, 548 (N.D. Ohio 2003).

Under O.R.C. § 2715.045, a court may grant an attachment without first holding a hearing, as was done here by the state court in entering the Attachment Order. However, if, after a hearing is held, "the court finds that there is not probable cause to support the motion [for attachment], it shall order that the property be redelivered to the defendant without the condition of bond." O.R.C. § 2715.045(E). Although on its face O.R.C. § 2715.043(B) relates to a hearing on a plaintiff's initial motion for pre-judgment attachment, (at the very least) it provides guidance for determining whether an attachment order should remain in place or be modified when a defendant moves to discharge or modify it and requests a hearing:

> If a hearing is requested … the hearing shall be limited to a consideration of whether there is probable cause to support the motion [for an order of attachment pursuant to O.R.C. § 2715.03] and whether any of the property of the defendant is exempt from attachment. The court shall issue an order of attachment if it finds, on the basis of the affidavit [provided by the plaintiff pursuant to O.R.C. § 2715.03] and, if applicable, the evidence presented at the hearing, that there is probable cause to support the motion.

O.R.C. § 2715.043(B).[8] The all-important phrase "probable cause to support the motion" is defined at another statute as follows:

> 'Probable cause to support the motion' means that it is likely that a plaintiff who files a motion for attachment pursuant to [O.R.C. § 2715.03] will obtain judgment against the defendant against whom the motion was filed that entitles the plaintiff to a money judgment that can be satisfied out of the property that is the subject of the motion.

O.R.C. § 2715.011(A).

---

[8] Alouette's request for an evidentiary hearing was made pursuant to O.R.C. §§ 2715.043 and 2715.045. (Doc. 5.)

Thus, among other things, the party that wants pre-judgment attachment of a defendant's property must establish one or more of the grounds enumerated in O.R.C. § 2715.01 <u>and</u> that the probable cause requirement is met. The party seeking an attachment order has the burden "to establish a right to attachment by a preponderance of the evidence." *Swartz*, 2014 U.S. Dist. LEXIS 51933, at *6. Although *Swartz* involved a different procedural scenario where an attachment order had not yet been entered, the Court believes that at least in this situation—where the attachment order was entered without prior notice to the defendants and without a hearing—the burden remains with the party that wants the attachment order to remain in place.[9] *See* O.R.C. § 2715.045(A) and (E) (using the same standard of "probable cause to support the motion" whether an attachment order has already been issued or not); *Data Processing Scis. Corp.*, 2016 U.S. Dist. LEXIS 73385, at *4 (describing pre-judgment attachment as "extraordinary relief" and stating that "[t]he plaintiff carries the burden of proof when seeking pre-judgment attachment").

B. **Application of the Legal Standards**

Based on the above, the two main questions presented by the Motion are whether Forefront has established, by a preponderance of the evidence, (1) at least one of the grounds for attachment under O.R.C. § 2715.01, and (2) that it is likely to obtain a judgment against Alouette that can be satisfied out of the property that is the subject of the Attachment Order and, if so, the amount of such judgment.

Again, Alouette argues that the Attachment Order should be discharged or modified because (1) Forefront does not face a threat of irreparable harm, and (2) Forefront has not demonstrated probable cause for the attachment. (Doc. 5 at PAGEID # 658.) However, whether

---

[9] Concerning the typical bond requirement, "[w]hen the ground of attachment is that the defendant is a foreign corporation, or not a resident of this state, the order of attachment may be issued without a bond," as was the case here (*see* Attachment Order). O.R.C. § 2715.044.

9

Forefront faces a threat of irreparable harm (Alouette's first argument) is not relevant for purposes of the Motion, which Alouette filed following notice of the Attachment Order and is being ruled on subsequent to a hearing. It is when a court is asked to issue an order of attachment <u>without issuing notice</u> to the defendant against whom the motion for pre-judgment attachment was filed <u>and without conducting a hearing</u> (therefore, not the scenario now presented) that the court must find "that the plaintiff that filed the motion for attachment will suffer irreparable injury if the order is delayed until the defendant against whom the motion has been filed has been given the opportunity for a hearing," among other requirements. O.R.C. § 2715.045(A), (B).

### (1) **Grounds for attachment under O.R.C. § 2715.01**

The Court finds that Forefront has met its burden in showing that SARIX and Alouette are each a foreign corporation and/or not a resident of Ohio. In addition to admitting in briefing that it is "a foreign corporate defendant" (Doc. 9 at PAGEID # 689), Alouette admitted that it is a New York corporation with its principal place of business in Fairport, New York, and that it is not registered to do business in Ohio. (Doc. 5 at PAGEID # 667.) At the January 22, 2020 evidentiary hearing, Forefront and Alouette stipulated for purposes of the Motion that SARIX is a foreign corporation not registered or licensed to do business in Ohio, and evidence demonstrates that SARIX is located in Switzerland. (*See id.*; Doc. 4 at PAGEID # 394; Defendant's Exhibits 1, 2, 10.) Additionally, claims in the Complaint seek payment of an alleged debt or demand arising from a contract with those two defendants, and this is a civil action for the recovery of money. O.R.C. § 2715.01(A), (B). Therefore, the Court finds that there are grounds for attachment under O.R.C. § 2715.01(A)(1) and/or (A)(2). Alouette has not argued otherwise or indicated that any exemption from attachment would apply.

### (2) **Probable cause requirement**

The Court also finds that Forefront has met its burden to show that it is likely to obtain a judgment against Alouette that can be satisfied out of property that is the subject of the Attachment Order. However, Forefront has not met its burden with respect to the amount that it seeks to attach: $2,407,022.31. Instead, it has only met its burden to attach $271,813.01. This amount corresponds with allegedly outstanding amounts for commissions on certain items, as set forth below.

As referenced above, Forefront brings claims against SARIX and Alouette for, among other things, breach of contract, unjust enrichment, and violation of O.R.C. § 1335.11. That statutory section states, in part:

> (C) Upon the termination of a contract between a principal and a sales representative for the solicitation of orders for a product or orders for services, the principal shall pay the sales representative all commissions due the sales representative at the time of the termination within thirty days of the termination and shall pay the sales representative all commissions that become due after the termination within thirteen days of the date on which the commissions become due.
>
> (D) A principal who fails to comply with division (C) of this section or with any contractual provision concerning timely payment of commissions due upon termination of a contract with a sales representative is liable in a civil action for exemplary damages in an amount not to exceed three times the amount of the commissions owed to the sales representative if the sales representative proves that the principal's failure to comply with division (C) of this section or the contractual provision constituted willful, wanton, or reckless misconduct or bad faith. If a principal receives a written demand for payment of the commissions owed to a sales representative that was sent by certified mail, the failure of the principal to respond to the written demand in writing within twenty days after the principal receives the written demand shall raise a presumption that the principal acted willfully and in bad faith. The prevailing party in an action brought under this section is entitled to reasonable attorney's fees and court costs.

O.R.C. § 1335.11(C), (D). The statute applies to both oral and written agreements, although whether the agreement is in writing does affect determining the time at which a commission is

11

due.[10]  *See* O.R.C. § 1335.11(B).

"A cause of action for breach of contract requires the claimant to establish the existence of a contract, the failure without legal excuse of the other party to perform when performance is due, and damages or loss resulting from the breach." *Lucarell v. Nationwide Mut. Ins. Co.*, 2018-Ohio-15, 152 Ohio St. 3d 453, 97 N.E.3d 458, 469 (Ohio 2018). "Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual asset and legality of object and of consideration." *Williams v. Ormsby*, 2012-Ohio-690, 131 Ohio St. 3d 427, 966 N.E.2d 255, 258 (Ohio 2012). A cause of action for unjust enrichment requires the plaintiff to "demonstrate: (1) a benefit conferred by a plaintiff upon a defendant, (2) knowledge by [the] defendant of the benefit, and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *In re Estate of Bohl*, 2016-Ohio-637, 60 N.E.3d 511, 521-22 (Ohio Ct. App. 2016); *see also Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 465 N.E.2d 1298, 1302 (Ohio 1984).

In the Motion, Alouette broadly avers that it "disputes and denies all of [Forefront's] claims. (Doc. 5 at PAGEID # 659.) It specifically "denies that it ever agreed to pay [Forefront] a 10% lifetime commission on machines sold to Silfex." (Doc. 9 at PAGEID # 691.) It also argues that "[t]he mere inclusion of [Forefront's] name on some purchase orders—albeit incorrect ones—does not make [Forefront] any more likely to succeed in this case." (*Id.*)

However, the purchase orders are not the only evidence relied on by Forefront to support its claims. For example, the Termination Letter acknowledges the existence of an agreement.[11]

---

[10] Under Subsection (B)(2), if the contract between the principal and the sales representative is not in writing, "the time at which a commission is due to a sales representative," is determined by "the past practice used by the principal and the sales representative." O.R.C. § 1335.11(B)(2).

[11] Alouette does not specifically deny the existence of an agreement; instead, it "contends that the terms of its agreement with [Forefront] were limited and that they were different from what [Forefront] has alleged." (Doc. 9 at PAGEID # 691.)

(Defendant's Exhibit 10.) The Termination Letter also acknowledges that SARIX and/or Alouette paid Forefront commissions for Machines 1 and 2, and that Forefront would get paid at least some commissions for certain other machines. (*Id.*) Purchase orders for certain machines address the orders to Alouette <u>care of</u> Forefront.[12] (*See, e.g.,* Defendant's Exhibits 4, 5, and 6.) Mr. Brogan also testified at the evidentiary hearing that Alouette and SARIX made Forefront Alouette's regional sales representative in Ohio for the SARIX product line. And, at least some of the checks written by Alouette to Forefront reference commissions for SARIX-Silfex orders (as well as "subcontracting") and a 10% commission. (*See* Plaintiff's Exhibit 2.) Additionally, Mr. Brogan testified during the evidentiary hearing that Forefront (as regional representative) was to be paid 10% in commissions for tooling on certain machines sold to Silfex and invoiced in 2016.

The Court finds that Forefront is likely to obtain a money judgment against Alouette based on at least one of its claims for damages. Therefore, it disagrees with Alouette's second argument—that Forefront has not demonstrated probable cause for an attachment.[13] However, Forefront has not met its burden for an attachment in an amount that would include all of the damages that it is seeking. Based on the parties' various filings and the evidence presented, including at the evidentiary hearing, the Court makes the following findings with respect to the amount of the attachment.

First, the Court finds that Forefront <u>has met</u> its burden for an attachment that includes the remaining amounts allegedly due for (a) Machines 1 through 13 ($258,227.95), (b) Tooling 1 through 3 ($8,376.64),[14] and (c) Subcontracting ($5,208.42). Those total $271,813.01. Although

---

[12] Alouette points out that the purchase orders were issued to Alouette, not SARIX. (Doc. 9 at PAGEID # 688.)
[13] At the January 22, 2020 evidentiary hearing, counsel for Alouette and Forefront informed the Court that there is no disagreement on whether the property that Forefront seeks to attach is money in the possession of Silfex in Ohio. (*See also* Doc. 13.)
[14] In its objections attached to its post-hearing brief, Alouette asserts that Forefront "did not produce or provide the purchase orders or invoices" associated with Tooling 1 and Tooling 2. (Doc. 31-1.) Alouette is mistaken. (*See* Doc. 4 at PAGEID # 627-40 (Exhibits 13 and 14 to Complaint).) Alouette also asserts that Forefront failed to

the Court recognizes that at least some of those amounts (and whether Forefront is entitled to them) remain in dispute, the Court finds that Forefront has met its burden with respect to them for purposes of this Motion.

Second, the Court finds that Forefront has <u>not</u> met its burden for an attachment in an amount that would include commissions on Machines 14, 15, 16, 17, 18, 19, 20, 21, 22, or 23 (all of which were ordered well after the Termination Letter), alleged debts that are not yet due (<u>i.e.</u>, purchases by Silfex in the future), or other alleged amounts.

Third, the Court finds that Forefront has <u>not</u> established by a preponderance of the evidence that it is likely to recover treble damages. As set forth in the statute quoted above, treble damages are only available if Forefront proves that a "failure to [timely pay commissions that are due to Forefront] constituted willful, wanton, or reckless misconduct or bad faith." O.R.C. § 1335.11(D). Forefront argues that SARIX has failed to respond to the Demand Letter from September 18, 2019, so therefore there is a presumption that SARIX acted willfully and in bad faith pursuant to O.R.C. 1335.11(D). However, the Demand Letter was not sent until approximately two-and-a-half-years after the Termination Letter, Forefront has not shown that SARIX actually received the Demand Letter (despite Ms. Whitfield's Affidavit (Plaintiff's Exhibit 7) and efforts), and evidence at the January 22, 2020 hearing demonstrated that Alouette responded to the Demand Letter within twenty days.[15] Although evidence at the February 3, 2020 hearing demonstrated that Forefront made oral and written demands for payment prior the Demand Letter, those demands were not sent by certified mail; therefore, the presumption does not apply. O.R.C. § 1335.11(D).

Forefront also points to a couple of allegations in the Complaint to support its argument

---

provide support for the total order for Tooling 3, but again Alouette is mistaken. (*See* Doc. 4 at PAGEID #644 (Exhibit 15 to the Complaint, P.O. Number 87221 totaling $99,048.40).) Mr. Brogan testified at the evidentiary hearing regarding those invoices/purchase orders.

[15] *See* email in Defendant's Exhibit 8 dated September 25, 2019.

for treble damages, and it points out that Alouette appears not to dispute that it withheld commissions. (*See* Doc. 8 at PAGEID # 681-82; Doc. 30 at PAGEID # 827.) Forefront points to Mr. Brogan's testimony at the evidentiary hearing that he withheld commissions following the Termination Letter based on his anticipation of litigation. Mr. Brogan's testimony also indicates he did so at the advice of his counsel (following what he perceived to be threatening emails from Mr. Nold) and that he had directed Mr. Nold to have all communications go between their attorneys. Mr. Brogan also testified that there were alleged performance issues with Forefront starting in mid-2016. Apart from the statute itself, Forefront cites no authority to support that a failure to pay in the situation presented constitutes "willful, wanton, or reckless misconduct" or "bad faith." O.R.C. § 1335.11(D). The Court finds Forefront's evidence and arguments on the issue are insufficient to meet its burden.

Finally, the Court emphasizes that this Order does not decide whether Forefront's claims actually will succeed or will not succeed; it only determines that, as of the time of this Order, based on the evidence presented to the Court applied to the law set forth above, Forefront has established, by a preponderance of the evidence, what is necessary to obtain an attachment order in the amount of $271,813.01. Additionally, this Order does not place a ceiling or floor on the amount of a judgment that Forefront may be awarded, it does not prevent Forefront from seeking to collect any judgment for amounts more than the amount in this Order, and it does not limit the ways in which Forefront may seek to collect a judgment.

### III.   CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** Alouette's Motion to Discharge Attachment. The Court **DENIES** Alouette's request to discharge the Attachment Order; however, the Court **GRANTS** Alouette's request to modify the Attachment Order. Specifically,

15

the Court **MODIFIES** the Attachment Order (Doc. 1 at PAGEID # 327-30) such that the word "moneys" in the Attachment Order is replaced by the phrase "$271,813.01 of the moneys."

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, February 18, 2020.

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE