UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

FOREFRONT MACHINING  :
TECHNOLOGIES, INC.,   :
                      :
                      :  Case No. 3:19-cv-383
    Plaintiff,         :
                      :  Judge Thomas M. Rose
    v.                :
                      :
SARIX SA, *et al.*,   :
                      :
    Defendants.       :

## ENTRY AND ORDER DENYING DEFENDANT ALOUETTE TOOL COMPANY LTD.'S AND SPECIALLY APPEARING DEFENDANT SARIX SA'S MOTION TO QUASH PURPORTED SERVICE OF PROCESS (DOC. 16)

Pending before the Court is "Defendant Alouette Tool Company Ltd.'s and Specially Appearing Defendant SARIX SA's Motion to Quash Purported Service of Process" (Doc. 16) (the "Motion"). The Motion is brought by both Defendant Alouette Tool Company, Ltd. ("Alouette") and Defendant SARIX SA ("SARIX"), although SARIX states that it "has appeared in this action solely for the limited purpose of moving to quash [Plaintiff Forefront Machining Technologies, Inc.'s] purported service of process on it via Alouette and David Brogan…."[1] (Doc. 16 at PAGEID # 175.) In the Motion, Defendants request that, pursuant to Federal Rules of Civil Procedure 4 and 12(b), the Court quash Forefront's purported service of process on SARIX via Alouette and Mr. Brogan and order Forefront to serve SARIX (if it intends to do so) "via the proper channels required by the Hague Convention" (presumably meaning in accordance with Fed. R. Civ. P. 4(h)(2)).[2] (Doc. 16 at PAGEID # 715, 727.)

---

[1] Given that Silfex, Inc. has now been dismissed as a defendant (*see* 02/27/2020 Notation Order), the Court will refer to Alouette and SARIX collectively as the "Defendants."
[2] Based on the briefing, the Court interprets the Motion as one pursuant to Rule 12(b)(5). 5B Charles A. Wright, *et*

1

Plaintiff Forefront Machining Technologies, Inc. ("Forefront") filed a response in opposition to the Motion (the "Response"). (Doc. 27.) Alouette and SARIX filed a reply in support of the Motion (the "Reply"). (Doc. 34.) The Motion is fully briefed and ripe for review. For the reasons discussed below, the Court **DENIES** the Motion.

I.  BACKGROUND

As explained in the Court's February 18, 2020 Order (Doc. 32),[3] the Verified Complaint alleges that Alouette and SARIX entered into an oral agreement to pay Forefront a commission upon any sales made as a result of Forefront's efforts, contacts, knowledge, and labor. (*See* Doc. 4.) Forefront alleges that it performed under that agreement, securing Silfex, Inc. ("Silfex") as a customer for SARIX and Alouette and procuring the sales of at least 23 machines to Silfex, but SARIX and Alouette failed to pay all of the amounts owed to Forefront. (*Id.*)

The Complaint alleges that SARIX is a Swiss corporation with its principal place of business in Switzerland. (Doc. 4 at PAGEID # 394.) Alouette is a New York corporation with its principal place of business in New York. (*Id.*; Doc. 5 at PAGEID # 667.) Following removal of this case from Ohio state court, Forefront requested that the Court issue two separate summons to SARIX, one "by delivery upon its general and/or managing agent pursuant to Rule 4(h)(1)(B):

---

*al.*, Federal Practice & Procedure § 1353 (3d ed. updated Aug. 2019) ("An objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service. Technically, therefore, a Rule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons. A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint."); *see also id.* at § 1354 (a motion under Rule 12(b)(5) "offer[s] the district court a course of action—quashing the process without dismissing the action—other than simply dismissing the case when the defendant's defense or objection is sustained"); *see also Stern v. Beer*, 200 F.2d 794, 795 (6th Cir. 1952) ("if the first service of process is ineffective, a motion to dismiss should not be granted, but the case should be retained for proper service later"). While the Motion asserts that this Court lacks personal jurisdiction over SARIX, the sole support for that assertion in the Motion is the alleged improper service. Although they can be interrelated, an argument that there is a lack of personal jurisdiction is distinguishable from an argument that there is insufficient service of process. Fed. R. Civ. P. 12(b)(2), (5) (demonstrating that lack of personal jurisdiction and insufficient service of process are separate defenses).
[3] Also available at 2020 U.S. Dist. LEXIS 27039, 2020 WL 804858 (S.D. Ohio Feb. 18, 2020).

Alouette Tool Company Ltd.," and the other "by delivery upon its general and/or managing agent pursuant to Rule 4(h)(1)(B): David Brogan." (Docs. 10 and 11 (emphasis added).) The Court issued those summonses, and Alouette's President, David Brogan ("Mr. Brogan"), acknowledges that he received them on December 23, 2019 by hand-delivery. (Doc. 12; Doc. 16-1 at PAGEID # 730; *see also* Doc. 18.)

In support of the Motion, Mr. Brogan provided a declaration that states, in part, the following:

> I am not an employee, officer, director, cashier, manager, or managing agent of defendant [SARIX]. Neither I nor Alouette have been authorized by law to receive service of process on behalf of SARIX. Alouette is a distributor for various products manufactured by SARIX in the United States and Alouette sells SARIX's products in the United States. Neither I nor Alouette have decision-making authority or general authority to act on behalf of SARIX in the United States. Neither I nor Alouette is generally authorized to contractually bind SARIX. Neither I nor Alouette is obligated to communicate with SARIX on a regular basis. I communicate with SARIX from time to time for purposes of facilitating the sale of its products in the United States as needed.
>
> SARIX is not contractually obligated to use Alouette as its exclusive distributor in the United States, or even to use Alouette to sell or distribute SARIX's products in the United States.
>
> … SARIX is not Alouette's exclusive vendor. Alouette is not prohibited from selling the products of other manufacturers, and does, in fact, sell products in the United States from manufacturers and vendors other than SARIX.
>
> Alouette is a privately held corporation. No other corporation own[s] shares of Alouette's stock. Alouette is not a subsidiary of or owned in whole or in part by SARIX.

(Doc. 16-1.)

However, in the Reply, Defendants admit that Alouette is "SARIX's *current* sole distributor in the United States." (Doc. 34 at PAGEID # 868 (emphasis in original).) Additionally, a letter on SARIX letterhead dated February 2, 2017 from SARIX and Alouette to Forefront's President (Paul Nold) (the "Termination Letter") states that "Alouette Tools is Sarix [sic] sole

3

agent in the United States." (Doc. 4 at PAGEID # 650.[4]) The Termination Letter also states: "Local technical support for Silfex will be delivered by Alouette and Sarix at the first level through Mr. Mick Peda with the stock of spare parts that Sarix located at Silfex." (*Id.*) And, one of the Termination Letter's concluding statements is that "[n]o further business is planned between Paul Nold / Forefront and Alouette / Sarix." (*Id.*) The Termination Letter is signed by Mr. Brogan (from Alouette) and by both SARIX's CEO and its Sales Manager. (*Id.*)

During a hearing before the Court on January 22, 2020 regarding a different motion filed by Alouette, Mr. Brogan testified that an employee from Silfex had initially contacted SARIX's CEO; in turn, SARIX's CEO put Mr. Brogan (of Alouette) in contact with the Silfex employee. (Doc. 36 at PAGEID # 883-87; *see also* Defendant's Exhibits 1 and 2 from 1/22/2020 hearing.) During his testimony, Mr. Brogan said that he then contacted the Silfex employee by phone to introduce himself "as the U.S. agent for SARIX" and advise the Silfex employee that he (Mr. Brogan) would be sending some documentation regarding SARIX equipment. (Doc. 36 at PAGEID # 886-87.)

Mr. Brogan also testified at that hearing that Alouette has exclusivity on many product lines for the manufacturers that it represents in the United States and Canada, and one of those manufacturers is SARIX. (Doc. 36 at PAGEID # 882.) When asked to describe Alouette's relationship with SARIX, Mr. Brogan testified that Alouette represents SARIX in sales for its product (electronic discharge machines ("EDM")). (*Id.*) He added that SARIX is the only EDM company that Alouette represents in the United States. (*Id.* at PAGEID # 916-17.) Mr. Brogan also testified that some purchase orders from Silfex were revised because SARIX "just wanted the U.S. agent's name on them" (meaning Alouette) and not also Forefront's name because Forefront

---

[4] A copy of the Termination Letter was admitted as Defendant's Exhibit 10 in a January 22, 2020 hearing in this case on a different motion filed by Alouette.

4

was only a sales representative for Alouette in Ohio in relation to the SARIX product line (Alouette's regional representative). (*Id.* at PAGEID # 905-06, 921-22.) Mr. Brogan added the Alouette cannot have regional representatives without the approval of SARIX. (*Id.* at PAGEID # 889.)

Purchase orders from Silfex for SARIX machines identify Alouette (sometimes care of Forefront), not SARIX, as "Vendor." (*See, e.g.,* Doc. 4 at PAGEID # 414-446; Defendant's Exhibits 3 and 4 from 1/22/2020 hearing.) With respect to Silfex's purchases of SARIX machines, according to Mr. Brogan's testimony at the January 22, 2020 hearing, Alouette would buy the machines from SARIX (at a discount) and then resell them to Silfex; Silfex would make payments to Alouette for the machines. (Doc. 36 at PAGEID # 891-93, 917, 925.) Yet Mr. Brogan also testified that, in determining the discount given to a customer for purchasing a SARIX machine from Alouette, if a discount was given to that customer (for example, because the customer ordered multiple machines) then "Alouette and SARIX" would determine that discount. (*Id.* at PAGEID # 892.)

Finally, on cross-examination, Mr. Brogan testified that, when Paul Nold of Forefront told him at the time that the Silfex opportunity arose that he (Mr. Nold) did not want to "get screwed" after putting in a bunch of leg work, Mr. Brogan assured him that would not happen, although he (Mr. Brogan) did not expect things to go the way they turned out. (Doc. 36 at PAGEID # 924.) However, the testimony did not indicate that Mr. Brogan made that assurance for, or on behalf of, SARIX. (*Id.*)

## II.  LEGAL STANDARD

"Service of process refers to a formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action." *Volkswagenwerk Aktiengesellschaft v.*

5

*Schlunk*, 486 U.S. 694, 700, 108 S Ct. 2104, 100 L. Ed. 2d 722 (1988).  The plaintiff bears the burden of perfecting service of process and showing that proper service was made.  *See* Fed. R. Civ. P. 4(c), (h); *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996); *see also Simmons v. Comm'r of Internal Revenue*, No. 1:05-cv-542, 2007 U.S. Dist. LEXIS 98231, at \*1 (S.D. Ohio Apr. 11, 2007) (adopted by 2007 U.S. Dist. LEXIS 30504 (S.D. Ohio Apr. 25, 2007)) ("Plaintiff bears the burden of exercising due diligence in perfecting service of process and showing that proper service has been made").  Materials outside of the pleadings, such as affidavits or other testimony, may be considered on a motion to quash service of process.  *Thompson v. Kerr*, 555 F. Supp. 1090, 1093 (S.D. Ohio 1982) ("In considering a motion to dismiss, pursuant to Rule 12(b)(5), this Court must accept as true all well pleaded allegations of the complaint, although reference to the record is permissible to determine the alleged insufficiency of service of process") (internal citations omitted); 5B Charles A. Wright, *et al.*, Federal Practice & Procedure § 1353 (3d ed. updated Aug. 2019) ("when the defendant supports a motion to quash service with an affidavit denying the validity of service, the plaintiff may present counter-affidavits, depositions, or oral testimony").

### III. ANALYSIS

Defendants argue that "federal law and the Federal Rules of Civil Procedure" require Forefront to "serve SARIX under the Hague Convention."  (Doc. 16 at PAGEID # 715.)  They assert that, although Forefront "has purported to serve Alouette and/or Alouette's president, Mr. Brogan, as the 'general and/or managing agents' of SARIX," neither Alouette nor Mr. Brogan qualify as such and they also do not qualify to accept service of process on behalf of SARIX in the United States.  (*Id.*)

In response, Forefront argues that "[t]he Federal Rules of Civil Procedure permit service on an agent of a defendant if that service complies with federal law, the law of the forum (Ohio),

or the law of the state where service was made (New York)." (Doc. 27 at PAGEID # 775.) Forefront asserts that serving Alouette or Mr. Brogan was sufficient service of process with respect to SARIX because the facts presented demonstrate that Alouette or Mr. Brogan is a "managing or general agent" of SARIX under New York, Ohio, or federal law. (Doc. 27.)

### A. Methods for Serving a Foreign Corporation

Although this case was removed from an Ohio state court (*see* Doc. 1), the Federal Rules of Civil Procedure apply here to the issue of sufficient service of process. 28 U.S.C. § 1448 ("In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court. ...."). Actual knowledge of a lawsuit is not a substitute for proper service under Federal Rule of Civil Procedure 4. *LSJ Inv. Co., Inc. v. O.L.D., Inc.*, 167 F.3d 320, 322 (6th Cir. 1999). *Accord: Fashion Page, Ltd. v. Zurich Ins. Co.*, 406 N.E.2d 747, 751 (N.Y. 1980).

In accordance with Federal Rule of Civil Procedure 4(h), typically there are multiple methods available for serving a foreign corporation with a summons and complaint. Rule 4(h) is divided into two categories: Rule 4(h)(1) is applicable when service is attempted or made within a U.S. judicial district (i.e., domestic service), while Rule 4(h)(2) is applicable when service is attempted or made outside of a U.S. judicial district (i.e., foreign service). Fed. R. Civ. P. 4(h); *see also Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 707 (compliance with the Hague Convention is not required "[w]here service on a domestic agent is valid and complete under both state law and the Due Process Clause.").

Here, because the service at issue was made in the state of New York (thus, within a U.S. judicial district), Rule 4(h)(1) contains the permissible methods that are relevant to the issue

7

presented. Specifically, Rule 4(h)(1) provides, in part, the following:

> **(h) Serving a Corporation, Partnership, or Association.** Unless federal law provides otherwise or the defendant's waiver has been filed, a … foreign corporation … must be served:
>
> > **(1)** in a judicial district of the United States:
> >
> > > **(A)** in the manner prescribed by Rule 4(e)(1) for serving an individual [i.e., "by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made"]; or
> > >
> > > **(B)** by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant; ….

Fed. R. Civ. P. 4(h)(1) (incorporating part of Fed. R. Civ. P. 4(e)(1) into Fed. R. Civ. P. 4(h)(1)(a)). As indicated above, Forefront argues that serving Alouette or Mr. Brogan effected sufficient service of process on SARIX under New York law (pursuant to Rule 4(h)(1)(A), where service was made), under Ohio law (pursuant to Rule 4(h)(1)(A), where this district court is located), or under federal law (pursuant to Rule 4(h)(1)(B)).

### B. New York Law

In New York, "[p]ersonal service upon a corporation…shall be made by delivering the summons as follows: upon any domestic or foreign corporation, to an officer, director, managing or general agent, or cashier or assistant casher or to any other agent authorized by appointment or by law to receive service. …." New York Civil Practice Law and Rules (N.Y. C.P.L.R.) § 311(a)(1). The statute's purpose is "to give the corporation notice of the commencement of the suit." *Fashion Page*, 406 N.E.2d at 750. As explained in *Fashion Page*, "[d]elivery of the summons to the officials or employees designated by the Legislature fulfills the statutory aim since their 'positions are such as to lead to a just presumption that notice to them will be notice to the

8

… corporation.'" *Id.* (alteration in original) (quoting *Tauza v. Susquehanna Coal Co.*, 115 N.E. 915, 918 (N.Y. 1917)). Yet, New York law does not require that an agent specifically be designated as one who can accept service of process in order to be considered a "managing or general agent" under the statute. N.Y. C.P.L.R. § 311(a)(1); *Fashion Page*, 406 N.E.2d at 751 ("the designation procedure … is not the only way of appointing an agent for receipt of process").

The Court of Appeals of New York (New York's highest court) held in *Fashion Page* that the statute "should be liberally construed." *Fashion Page*, 406 N.E.2d at 750; *see also De Candia v. Hudson Waterways, Inc.*, 452 N.Y.S.2d 196, 197 (N.Y. App. Div. 1982) (section 311(a)(1) "should not be read narrowly"). "[I]f service is made in a manner which, objectively viewed, is calculated to give the corporation fair notice, the service should be sustained." *Fashion Page*, 406 N.E.2d at 751 (finding valid service when a process server delivered the summons to the secretary of the defendant corporation's vice president); *see also Fonar Corp. v. Tariq Contracting, Inc.*, 885 F. Supp. 56, 61 (E.D.N.Y. 1995) ("[a]ccording to the case law, all [§ 311] requires when there has been no express authorization to accept service is service which, when viewed objectively, is calculated to give the corporation fair notice of the action").

Thus, in the context of serving an alleged agent for a foreign corporation, "[s]ervice on the agent is proper as long as the agent is so related to the foreign corporation that it may be justly inferred that the foreign corporation will have notice of the action." *Fonar*, 885 F. Supp. at 61 (citing New York law). Still, New York courts recognize that "[s]ervice upon an outsider will not suffice even though the outsider thereafter conveys notice to the corporation." *De Candia*, 452 N.Y.S.2d at 197. The court's analysis is fact-specific. *Fashion Page*, 406 N.E.2d at 751 ("[i]n evaluating whether service is to be sustained, the circumstances of the particular case must be weighed").

9

The issue here is focused on whether Alouette or Mr. Brogan qualify as a "managing or general agent" of SARIX. Despite being a separate corporate entity, the Court would not characterize Alouette or Mr. Brogan as an "outsider" to SARIX. *De Candia*, 452 N.Y.S.2d at 197. Their relationship with SARIX is one that includes regular contact between them, with Defendants admitting that Alouette is "SARIX's *current* sole distributor in the United States" (Doc. 34 at PAGEID # 868 (emphasis in original)) and specifically telling Forefront—in the Termination Letter from which the parties' dispute arose—that "Alouette Tools is Sarix [sic] sole agent in the United States" (Doc. 4 at PAGEID # 650). Additionally, Mr. Brogan testified that he would introduce himself "as the U.S. agent for SARIX," that Alouette represents SARIX in sales of its product, that Alouette cannot have regional representatives without SARIX's approval, and that Alouette and SARIX together determine discounts for purchasers. (Doc. 36 at PAGEID # 882, 887, 889, 892.)

That close relationship between Alouette and SARIX is further shown in Forefront's claims in this case, which are based on Forefront's allegation that Alouette and SARIX jointly entered into an oral contract with Forefront. (*See, e.g.*, Doc. 4 at ¶ 1 ("SARIX and Alouette agreed to pay FMTI a commission of ten percent (10%) upon any sales made as a result of FMTI's efforts, contacts, knowledge and labor.")) The allegation is supported by the Termination Letter—signed by both Mr. Brogan (Alouette) and SARIX's CEO and Sales Manager—that states in its first sentence: "We would like to clarify the relationship between Sarix and your company, as discussed during the last meeting of our visit in December 2016 and agreed between Sarix and Alouette Tool Inc. as follows." (Doc. 4 at PAGEID # 650.)

Based on the particular circumstances of this case, and construing N.Y. C.P.L.R. § 311(a)(1) in accordance with *Fashion Page*'s guidance, the Court finds that Forefront has met its

burden of showing that it made sufficient service of process with respect to SARIX. The facts presented support a conclusion that delivering the summons to Alouette or Mr. Brogan, "when viewed objectively, is calculated to give [SARIX] fair notice." *Fashion Page*, 406 N.E.2d at 751. The relationship between Alouette and SARIX is such that, in these particular circumstances, one could justly presume that serving a summons for SARIX on Alouette or Mr. Brogan would result in notification to SARIX. *Id.* at 750-51.

Caselaw cited by Forefront that applies New York law further supports this decision.[5] For example, in *Fonar*, the Eastern District of New York, analyzing New York caselaw, found that N.Y. C.P.L.R. § 311(a)(1)'s list of "'officer, director, managing or general agent' … obviously includes an individual … specifically referred to as the corporation's 'representative' in the United States." *Fonar*, 885 F. Supp. at 60 (quoting N.Y. C.P.L.R. § 311(a)(1)). In that case, the defendant foreign corporation's president had stated that the person served was the foreign corporation's "representative" in the United States, which the court found "clearly indicated that [foreign corporation] intended that [the person served] would be more than a limited agent." *Id.* at 61.

In *Stimler*, the Southern District of New York found that "[i]t is clear under New York law that an exclusive sales agent is a 'managing agent' and that a foreign corporation is properly served if its agent is doing business in New York even though the agent may be a separate corporate entity." *Stimler v. Yoshida Shoji Co.*, 195 F. Supp. 671-72 (S.D.N.Y. 1961) (internal citations omitted) (citing New York law). Although some of its facts are distinguishable, the court in *Simler*

---

[5] The New York caselaw cited by Defendants does not convince the Court otherwise, given the particular circumstances presented here coupled with the principles set forth in *Fashion Page*. For example, in *De Candia*, the person served was an officer for a company that the court found did not "bear any relationship" to the defendant. *De Candia*, 452 N.Y.S.2d at 197. Here, Defendants have admitted a relationship between Alouette and SARIX, including stating that Alouette is currently the distributor for SARIX in the United States and telling Forefront that Alouette was its "sole agent in the United States." However, this is not to say that New York law provides that, in every instance, any company that is the sole distributor or seller of a foreign company's products would qualify as a "managing or general agent" for purposes of serving process pursuant to N.Y. C.P.L.R. § 311(a)(1).

explained that "the only issue is whether [the company served in New York] is defendants' exclusive sales agent." *Id.* The court found that it was and concluded that, "[a]s the exclusive sales agent, … service on the domestic agent is proper service on the foreign principal if the local agent is doing business here." *Id.* at 673; *see also Ameritex Dev. Corp. v. Brown & Sites Co.*, 135 N.Y.S.2d 478, 1954 N.Y. Misc. LEXIS 3015 (N.Y. Sup. Ct. Sept. 27, 1954) (where service was made on the president of a New York company that was the exclusive representative in soliciting and developing business in that state for the foreign defendant corporation, the court found that the New York company was a "managing agent" for purposes of New York's service statute and, therefore, the motion to vacate service of process was denied, despite the fact that the New York company also represented other companies in the sale of other products).

## IV.  CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant Alouette Tool Company Ltd.'s and Specially Appearing Defendant SARIX SA's Motion to Quash Purported Service of Process (Doc. 16). Given that the Court has found that SARIX was properly served by Forefront following New York law in accordance with Fed. R. Civ. P. 4(h)(1)(A), it does not reach Forefront's alternative arguments regarding Ohio law and federal law. SARIX is **ORDERED** to answer or otherwise respond to the Complaint (Doc. 4) within 28 days of the entry of this order.

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, March 31, 2020.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE
