**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| FOREFRONT MACHINING TECHNOLOGIES, INC., | : | Case No. 3:19-cv-383 |
| | : | |
| Plaintiff, | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| SARIX SA, *et al.*, | : | |
| | : | |
| Defendants. | : | |

---

**DECISION & ORDER**

---

### I.      Introduction

This case involves the termination of an oral contract for sales commissions between

Plaintiff Forefront Machining Technologies, Inc. ("Forefront"), and Defendants SARIX

SA ("SARIX") and Alouette Tool Company, Ltd. ("Alouette") (collectively,

"Defendants").  The discovery disputes presently before the Court, however, center around

Non-Party, Silfex, Inc. ("Silfex").  Non-Party Silfex was an interested-party defendant

when the case was initiated, but was later dismissed from the case in February 2020.[1]

This matter is before the Court upon Forefront's Motion for a Protective Order, or

in the Alternative, to Quash Defendants' Third-Party Subpoena to Silfex ("Motion for a

Protective Order") (Doc. No. 59), Defendants' Response in Opposition to Forefront's

---

[1] When acting as a sales representative for Defendants, Forefront sold SARIX machinetools and related items to Silfex.  Silfex was originally named as an interested-party defendant in this case because Silfex was believed to owe Defendants for the sale of these machinetools and related items.

Motion for a Protective Order (Doc. No. 62), Defendants' Motion to Compel and Local

Rule 37.1 Certification ("Motion to Compel") (Doc. No. 61), Silfex's Response in

Opposition to Defendants' Motion to Compel and Statement in Support of Forefront's

Motion for a Protective Order (Doc. No. 63), Forefront's Combined Response in

Opposition to Defendant's Motion to Compel and Reply in Support of Motion for a

Protective Order (Doc. No. 64), and Defendants' Combined Reply in Support of Motion to

Compel (Doc. No. 65).

## II.    Background

Before addressing the specific nature of the discovery disputes at issue, it is

important to provide some background as to discovery in this matter.  Indeed, for some

time now, Defendants have sought certain documents that relate to communications

between Forefront and Silfex.  In its First Request for Production on Forefront, Defendants

requested, in relevant part, "All communications between FTMI [Forefront] and Silfex

referencing or relating to FTMI, Paul Nold, Alouette, SARIX, Silfex, or allegations in the

Complaint." (Doc. No. 59, PageID 1193).  Forefront responded with objections:

> Objection. Forefront objects to this Request as overbroad and unduly
> burdensome and not reasonably calculated to lead to the discovery of
> admissible evidence to the extent that it is not limited to the time frame in
> which Forefront was a regional agent for SARIX/Alouette and is not limited
> to interactions with Silfex that relate to its orders of SARIX goods and
> services. Forefront objects to this Request as calling for highly confidential
> information, information subject to nondisclosure agreements, and
> competitively-sensitive information. Forefront further objects to this Request
> to the extent it seeks documents that are in the custody and control of
> Defendants.

> Subject to and without waiving the foregoing objections, Forefront will produce responsive, non-privileged documents, if any, at a mutually agreeable place and time.

*Id.* at 1193-94.

Accordingly, on April 14, 2021, Defendants served a subpoena ("Subpoena") by certified mail on Silfex. Defendants sought the following documents from Silfex:

> 1.  Any and all Documents evidencing Communications from January 1, 2014 through the present between You and Forefront Machining Technologies Inc. ("Forefront") and relating to: Alouette Tool Company, Ltd. ("Alouette"); SARIX SA ("SARIX"); electronic discharge machines ("EDM") purchased by Silfex from Alouette or SARIX; or the purchase of parts or services for EDM by Silfex from FMTI [Forefront], Alouette, or SARIX.
>
> 2.  Any and all Documents evidencing Communications from January 1, 2014 through the present between You and Paul Nold and relating to: Alouette; SARIX; EDM purchased by Silfex from Alouette or SARIX; or the purchase of parts or services for EDM by Silfex from FMTI [Forefront], Alouette, or SARIX.
>
> 3.  Any and all Documents evidencing Communications from January 1, 2013 through March 30, 2015 with Alouette or SARIX, or any of their respective employees or representatives, and relating to: Silfex's use of EDM acquired from Alouette or SARIX in Silfex's business; Silfex's purchase or acquisition of EDM from Alouette or SARIX; or the purchase of parts or services for EDM by Silfex from Alouette or SARIX.

(Doc. No. 62, PageID 1320-21). Silfex served timely written objections to the Subpoena on April 25, 2021. (Doc. No. 63, PageID 1416). Silfex objected on several grounds, including, but not limited to, improper service, privilege, undue annoyance, oppression, burden and expenses, and on the basis that the documents are equally or more readily available from another source, including a party. *Id.* at 1416.

In the months that followed, Defendants attempted to reach a resolution with Silfex but were largely unsuccessful. Defendants and Silfex engaged in negotiations regarding the scope of the Subpoena and expected costs for compliance. (Doc. No. 63, PageID 1417).

In May 2021, Defendants communicated a separate request to depose four specific Silfex employees. *Id.* at 1417; (Doc. No. 61, PageID 1252). Similar to before, Defendants were met with opposition by Silfex, and were unable to reach a resolution.

Defendants opted to narrow the terms of the Subpoena in June 2021. In accordance with these narrowed terms, Defendants asked Silfex to produce email communications responsive to the following search parameters: (1) from Fall 2019 to present, (2) from six specific custodians at Silfex, (3) emails to, from, carbon copying, or blind carbon copying Forefront's principal, Paul Nold, or Forefront, and (4) containing specific search terms that involve Defendants and their related products. (Doc. No. 61-3, PageID 1278-79). The specific search terms include: "SX200, Quadroni, Leleu, Brogan," "Alouette" (machine OR tool! OR part! OR guide OR resin OR servic!), 'Sarix' AND (machine OR tool! OR part! OR guide OR resin OR service!)." *Id.* at 1278-79.

Despite continued attempts of negotiation, Defendants and Silfex were unable to reach an agreement. On July 8, 2021, the Court held a telephone conference with Forefront, Defendants, and Silfex, but there was no progress toward resolution.

## III.    Applicable Law

Under the Federal Rules of Civil Procedure, the scope of discovery is "traditionally quite broad." *Lewis v. ACB Bus. Servs, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) (citing *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 501 (6th Cir.1970)).

> Parties may obtain discovery regarding any nonprivileged matter that is
> relevant to any party's claim or defense and proportional to the needs of the
> case, considering the importance of the issues at stake in the action, the
> amount in controversy, the parties' relative access to relevant information,
> the parties' resources, the importance of the discovery in resolving the issues,
> and whether the burden or expense of the proposed discovery outweighs its
> likely benefit. Information within this scope of discovery need not be
> admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  But, "this desire to allow broad discovery is not without limits

and the trial court is given wide discretion in balancing the needs and rights of both plaintiff

and defendant." *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991).

A party to a case may seek discovery through a subpoena to a non-party under

Federal Rule of Civil Procedure 45(c).  Indeed, "the scope of discovery through a subpoena

is the same as that applicable to Rule 34 and the other discovery rules."  Fed. R. Civ. P. 45,

Advisory Committee Notes (1970).  However, "a party or attorney responsible for issuing

and serving a subpoena must take reasonable steps to avoid imposing undue burden or

expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1).

When a party seeks to limit discovery from a non-party, it may file a motion for

protective order or seek to quash the subpoena.  Federal Rule of Civil Procedure 26(c)

provides that a "court may, for good cause, issue an order to protect a party or person from

annoyance, embarrassment, oppression, or undue burden or expense."  To prevail on a

motion for protective order, the party must "'show that the requested discovery does not

fall within Rule 26(b)(1)'s scope of relevance (as now amended) or that a discovery request

would impose an undue burden or expense or is otherwise objectionable.'"  *Bros. Trading

Co. v. Goodman Factors*, No. 1:14-CV-975, 2016 WL 9781140, at *2 (S.D. Ohio Mar. 2,

2016) (Litkovitz, M.J.) (quoting *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 322 F.R.D. 235, 242) (N.D. Tex. 2016)). Alternatively, on timely motion, a subpoena may be quashed if it "(iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

## IV.  Discussion

Defendants seek an order compelling Silfex to produce (1) communications between Silfex and Forefront in accordance with the narrowed terms of the Subpoena, and (2) four Silfex employees for deposition in accordance with the request made via email to Silfex's counsel. (Doc. No. 61, PageID 1246, 1257, 1264). Silfex opposes production of the communications and its employees for deposition. Forefront seeks a protective order to preclude discovery through the Subpoena, or in the alternative, to quash the Subpoena.

### A. <u>Subpoena for Documents</u>

Defendants contend the communications at issue are relevant to the merits of this case and production of these communications would not impose an undue burden on Silfex in contravention to Fed R. Civ. P. 45(d)(1). Forefront and Silfex contest both of these points, and argue that Defendants' request should be denied because the communications are not relevant, and compliance would impose an undue burden on Silfex.[2]

---

[2] Silfex also contends the subpoena is not valid due to lack of personal service. The issue of service under Fed. R. Civ. P. 45(b)(1) remains unresolved by the Sixth Circuit. Courts in this district have contemplated service under the rule, but have arrived at varying conclusions. *See Powell v. Time Warner Cable, Inc.*, No. 2:09-cv-600, 2010 WL 5464895, *3 (S.D. Ohio Dec. 30, 2010) (Deavers, M.J.) (collecting district court cases and concluding that service by certified mail "is effective so long as it reasonably insures actual receipt."); *McClendon v. TelOhio Credit Union, Inc.*, No. 2:05-cv-1160, 2006 WL 2380601, *2 (S.D. Ohio Aug. 14, 2006) (Kemp, M.J.) ("Rule 45(b)(1) requires personal service of subpoenas and does not permit service by certified mail."). There is no dispute that Silfex received the subpoena and responded in a timely manner, and then engaged in ongoing discussions about the subpoena with Defendants over several months. (Doc. No. 61-3, 63-2, 63-3). Silfex's counsel also participated in a conference with the Court regarding the subpoena on July 8, 2021. For these reasons, the undersigned declines to find the subpoena defective due to lack of personal service. *See Gist v. Pilot Travel Centers, LLC*, 3:10-mc-95, 2011 WL 4055788, *2, n. 1 (M.D. Tenn. Sept. 12, 2011) ("in circumstances where the service of the subpoena was not personal…, but the

Before proceeding to these respective contentions, the Court must first address the issue of standing as to Forefront's Motion for a Protective Order, or in the Alternative, to Quash.  In most circumstances, "a party does not have standing to challenge a subpoena issued to a non-party." *Am. Mun. Power, Inc. v. Voith Hydro, Inc.*, No. 2:17-cv-708, 2021 WL 1084605, at *6 (S.D. Ohio March 22, 2021) (Deavers, M.J.).  Yet, a party has standing if the party can successfully claim "some personal right or privilege with regard to the documents sought." *Mann v. University of Cincinnati*, 114 F.3d 1188 (Table), 1997 WL 2801888, *4 (6th Cir. May 27, 1997), quoting *9A Wright and Miller, Federal Practice and Procedure § 2459* (3d ed. 1998).  The "movant has the burden of persuasion on a motion to quash a subpoena." *9A Wright and Miller, Federal Practice and Procedure § 2459.*

Courts have recognized certain personal rights and privileges in documents such as personal bank records, information in personnel files, corporate bank records, and Indian tribal records.  *See Hackmann v. Auto Owners Ins. Co.*, No. 2:05-cv-876, 2009 WL 330314, *1 (S.D. Ohio Feb. 6, 2009) (Abel, M.J.) (citing *Schmulovich v. 1161 Route 9, LLC*, 2007 WL 2362598 (D.N.J. 2007); *Richards v. Convergys Corp.*, 2007 WL 474012 (D. Utah 2007); *Transcor, Inc. v. Furney Charters*, 212 F.R.D. 588 (D. Kan. 2003); *Catskill Dev., LLC v. Park Place Entertainment Corp.*, 206 F.R.D. 78 (S.D.N.Y. 2002)).

Forefront has not demonstrated that it has a sufficient personal right or privilege to confer standing as to its attempt to quash.  Forefront cites to *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 n.1 (S.D. Ohio 2011) to argue that it has a personal

---

party did actually receive the subpoena in a timely fashion and was not prejudiced by the method of service, it is appropriate for the court to overlook any technical deficiencies and explore the merits of the discovery request.").

right in the documents sought, but does not explain how the documents at issue here are analogous to the employment and scholastic records at issue in *Hendricks*. In this case, Forefront asserts that it has a personal interest and right in its communications with Silfex because they relate to "competitively sensitive information [that] includes Forefront's sales strategy, client contacts, and work on behalf of other manufacturers that directly compete with SARIX and Alouette." (Doc. No. 64, PageID 1470). Disclosure of this information would allegedly cause actual or imminent injury. (Doc. No. 59, PageID 1201-02).

However, Forefront does not explain how the specific search parameters, as defined in the narrowed scope of the Subpoena, would produce documents that contain competitively sensitive information. The documents sought must pertain to Defendants or their machines—not other manufacturers and their machines. Forefront has not described how the communications at issue would implicate its work on behalf of Defendants' competitors. Without more, the undersigned cannot sufficiently trace a personal interest and right held by Forefront in the communications sought by the Subpoena.

Yet, "where a party's standing may fall short to quash a subpoena under Rule 45, Rule 26(c) affords parties the ability to move for a protective order on a third party's behalf." *Diamond Resorts International, Inc. v. Phillips*, 3:17-cv-1124, 2018 WL 4328257, at \*2 (M.D. Tenn. July 16, 2018) (citing Fed. R. Civ. P. 26(c)). Indeed, Federal Rule of Civil Procedure 26(c) permits "a party or any person from whom the discovery is sought [to] move for a protective order…." *See also U.S. v. Operation Rescue*, 112 F.Supp.2d 696, 705 (S.D. Ohio 1999) (Rice, D.J.) ("[S]everal other federal courts have found that a party has standing to seek a protective order on behalf of non-parties.")

(citations omitted); *Thogus Prods. Co. v. Bleep, LLC*, 1:20-cv-1887, 2021 WL 827003, at *5 (N.D. Ohio March 4, 2021) ("[C]ourts have found that parties may have standing to seek a protective order under Rule 26(c) to preclude discovery though subpoenas issued to third parties.") (citing *White Mule Co. v. ATC Leasing Co. LLC*, No. 3:07-cv-57, 2008 WL 2680273, at *2 (N.D. Ohio June 25, 2008)).  Therefore, while Forefront may lack standing to move to quash the Subpoena, Forefront has standing to seek a protective order.

Turning to the central discovery issues before this Court, Silfex and Forefront both oppose Defendants' Motion to Compel on the basis that it would impose an undue burden on Silfex.  As here, "[w]hether a subpoena imposes an 'undue burden' upon a witness is a case specific inquiry that turns on 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *Sagebrush Solutions, LLC v. Health Mgmt. Sys. (In re CareSource Mgmt. Group. Co.*), 289 F.R.D. 251, 253 (S.D. Ohio Jan. 3, 2019) (Newman, M.J.) (citing *Am. Elec. Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)).  Therefore, courts must "balance the need for disclosure against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure." *Id.* (citing *Am. Elec. Power Co.*, 191 F.R.D. at 136) (quotations omitted).

The circumstances of this case indicate the documents are relevant.  *See Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) (Relevance for discovery purposes "is traditionally quite broad").  Silfex and Forefront both argue that documents from Fall 2019 to present are not relevant because the contract termination that gave rise to this case

9

occurred several years prior in 2017. Yet, Defendants emphasize that although the contract with Forefront was terminated in 2017, Forefront does not solely seek damages for the sales that occurred prior to the termination and instead claims sales commission "on at least some" sales that Defendants made to Silfex after termination. (Doc. No. 61, PageID 1263).

There is no dispute that Forefront and Silfex are "ongoing business partners." (Doc. No. 63, PageID 1423). Therefore, it is not unreasonable for Defendants to believe that "Silfex and Forefront have had non-privileged, relevant and discoverable communications about Defendants, the machines Defendants sold to Silfex, the claims and defenses at issue, and perhaps even about the lawsuit itself" during this time. (Doc. No. 61, PageID 1262). Indeed, one of Silfex's employees "executed an affidavit [in January 2020] supporting Forefront at an earlier critical hearing in this litigation." *Id.* This employee is one of the six custodians identified in the Subpoena's narrowed terms, and was also identified as a witness by Forefront. Defendants emphasize that these communications will relate to bias and credibility defects on the part of the Silfex employees that have been named as witnesses by Forefront and will relate to topics upon which they will be expected to testify. This too supports a finding that these documents are relevant. *See In re Complaint of Foss Maritime Co.*, No. 5:12-cv-21, 2015 WL 1249571, at *1 (W.D. Ky. March 18, 2015) ("A litigant may discover facts related to the credibility of a potential trial witness.").

Additionally, these communications can be traced to the merits. Defendants believe that communications between Forefront and Silfex will demonstrate how Silfex employees perceive the termination that gave rise to this case. Such perception may speak to Forefront's assertion that Defendants' conduct demonstrates that they acted in bad faith

pursuant to Ohio Revised Code § 1335.11(D). (Doc. No. 4, PageID 403). Although it may be true as Forefront contends, that these communications will not provide insight into the state of mind of Defendants, this does not foreclose the possibility that Silfex has perceptions about Defendants' conduct as well as Defendants themselves and their machines. And, as Defendants explain, Forefront also "alleges that it was the crucial reason for Defendants' sales to Silfex" and that "Defendants terminated Forefront once they had obtained Silfex as a customer." (Doc. No. 61, PageID 1263). Silfex may no longer be a party to this case—but that does not negate the fact that Silfex likely had a front row seat to the events that transpired and gave rise to this case. Silfex's role in these events makes the communications that may reflect their perceptions all the more relevant.

Notwithstanding the relevance of these documents, the burden imposed on Silfex cannot be ignored. To achieve compliance, Silfex indicates that it must "download all Office 365 communications for all theoretical custodians and transfer that information into a searching tool." (Doc. No. 63, PageID 1426). Silfex has already spent sixty hours (60) for the six custodians to accomplish this task. *Id.* Silfex would then need to search for responsive documents, and their "in-house legal hold expert has already expended six (6) hours in setting up potential search terms to date alone." *Id.* After some troubleshooting, Silfex's search returned 3,000 documents that "are highly likely to contain non-responsive documents, as well as privileged, confidential, proprietary, and trade secret information." *Id.* at 1426-27. The nature of the documents would require Silfex to enlist outside counsel to review them at an estimated rate of 1-3 minutes per document or for 50-150 hours. *Id.*

11

In total, Silfex estimates that compliance with the narrowed terms of the Subpoena "would likely require expenditure of over 100 hours of Silfex's and its outside counsel's time." *Id.*

In asserting that this burden outweighs any need for the communications, Forefront and Silfex both heavily rely on the notion that the documents are available from party opponent, Forefront, and as a result, Defendants should be precluded from seeking these documents from a non-party. However, Defendants did attempt to obtain these documents from another source, Forefront, before turning to Silfex. Earlier in this litigation, Defendants requested documents from Forefront that included: "All communications between FTMI [Forefront] and Silfex referencing or relating to FTMI, Paul Nold, Alouette, SARIX, Silfex, or allegations in the Complaint." (Doc. No. 59, PageID 1193). Forefront objected to producing these documents to Defendants. *Id.* at 1193-94.

Indeed, this Court has expressed that a party "must first establish that it cannot obtain the discoverable information from its party-opponent before subpoenaing those documents from a non-party." *See Sagebrush Solutions, LLC*, 289 F.R.D. at 254. In *Sagebrush*, the non-party was successful in quashing a subpoena because the documents requested by the subpoena mirrored documents requested from a party to the case. That party had already produced a number of documents, was regularly supplementing its document production, and continued to search for responsive documents. *Id.* This is distinguishable from the present case, because although Forefront may possess the documents at issue in the Subpoena, Forefront has previously refused to produce them. The present case is also distinguishable from *Musarra v. Digital Dish, Inc.*, No. 2:05-cv-545, 2008 WL 4758699, at *4 (S.D. Ohio, Oct. 30, 2008) (King, M.J.)—a case upon which

12

Silfex relies—because while plaintiffs conceded that defendants should have possession of the documents at issue, there was no indication that plaintiffs had made previous attempts to obtain those documents from the defendants before subpoenaing a non-party.

Forefront and Silfex seem to suggest that, despite Forefront's objections, Defendants should have made additional attempts to seek these communications from Forefront before proceeding to Silfex. The undersigned disagrees. As described above, Defendants demonstrated that they attempted to obtain these communications from a party prior to availing themselves of other options, i.e., a subpoena to a non-party.

The record also demonstrates that Defendants have made a cognizable effort to reduce the burden and expense imposed on Silfex in accordance with Fed. R. Civ. P. 45(d)(1). The original terms of the Subpoena were substantially broader than the narrowed terms at issue here. It is evident that Defendants have taken steps to reduce the burden that would be imposed by limiting the time period to less than two years, and reducing the breadth of the request to communications between six specific Silfex employees and Forefront. Defendants also provided highly specific search terms that would capture documents that pertained to only Defendants and their machines. Notably, while Silfex contests the time period and breadth of the original terms of the Subpoena, Silfex sets forth no argument as to how these factors apply to the narrowed terms at issue.

Upon careful consideration, the Court finds that Defendants' need for the documents outweighs the burden imposed on Silfex. Defendants have demonstrated that the relevance of the documents, the time period at issue, the breadth of the request and the particularity with which the documents are described all weigh in favor of disclosure. In addition,

13

Forefront has not demonstrated that production of these documents by Silfex would result in undue burden or expense that warrants a protective order in the instant case.

The inquiry, however, does not end there. Because, on July 13, 2021—a few days after Forefront filed its Motion for a Protective Order—Defendants served on Forefront a Second Set of Production of Documents seeking the following communications:

> 1. All Documents that constitute any Communication between you and Silfex pertaining to the Complaint.
>
> 2. All Documents that constitute any Communication between you and Silfex pertaining to the Lawsuit.
>
> 3. All Documents that constitute any Communication between you and Silfex pertaining to any request by you to Silfex to furnish or provide testimony or other evidence in the Lawsuit.
>
> 4. All Documents that constitute any Communication between you and Silfex pertaining to any offer by Silfex to you to furnish or provide testimony or other evidence in the Lawsuit.
>
> 5. All Documents that constitute any Communication between you and Silfex pertaining to a request for, offer of, or the creation of the affidavit of David Ruberg introduced as Plaintiff's Exhibit 16 at the hearing held in the Lawsuit on January 22 and February 3, 2020 pertaining to Alouette's Motion to Discharge Attachment in the Lawsuit.

(Doc. No. 64, PageID 1473). This request would most certainly produce some duplicative documents to that which would be produced by Silfex. *See* Fed. R. Civ. P. 26(b)(2)(c) ("[T]he court must limit the frequency or extent of discovery…if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.").

It would therefore be unreasonable to require Silfex—as a non-party—to produce documents that Forefront—a party—may produce in response to Defendants' Second Set

of Requests for Production of Documents.  And, although it is yet to be seen how Forefront will respond to this request, the Court cannot order production that may prove to be duplicative.  As discussed above, Forefront asserts that because they are "equally in possession" of the documents at issue, Silfex should not be ordered to produce these documents.  But this assertion cannot be viewed independent of the fact that Forefront already objected to producing the same.  However, in light of Defendants' recent request, it seems reasonable to wait for Forefront's production, or its response thereto, before placing that obligation squarely on Silfex.  Forefront should consider the foregoing in responding to Defendants' Second Set of Requests for Production of Documents.

Accordingly, Silfex will not be required to produce documents that are responsive to Defendants' Second Set of Requests for Production of Documents until such time when a determination is made regarding the adequacy of Forefront's production.  This includes documents that constitute communications between Silfex and Forefront that pertain (1) to the Complaint, (2) to the Lawsuit, (3) to any request by Forefront to Silfex to furnish or provide testimony or other evidence in the Lawsuit, (4) to any offer by Silfex to Forefront to furnish or provide testimony or other evidence in the Lawsuit, or (5) to a request for, offer of, or the creation of the affidavit of David Ruberg introduced as Plaintiff's Exhibit 16 at the hearing held in the Lawsuit on January 22 and February 3, 2020 pertaining to Alouette's Motion to Discharge Attachment in the Lawsuit.

In the event that there is reason for Silfex to produce documents in accordance with the terms above and costs will be incurred as a result, Silfex should address this issue with

15

Defendants.  However, if this issue cannot be resolved with Defendants directly, Silfex

may, upon motion, seek assistance or resolution from the Court.[3]

### B. Request for Depositions

Apart from the documents at issue in the Subpoena, Defendants challenge Silfex's

refusal to produce several employees for deposition.  (Doc. No. 61, PageID 1264).  Silfex

presently contends that they have a right to object to the depositions because Defendants

have failed to issue notices of the depositions or serve related subpoenas.  (Doc. No. 63,

PageID 1429-30).  Silfex asserts that, as a result of these deficiencies, this Court lacks the

power to compel non-party witness depositions.  *Id.*  The undersigned is inclined to agree.

When a party seeks an order compelling a non-party to appear for a deposition, "the

party seeking the deposition must not only notice the deposition, but must also properly

serve the non-party with a deposition subpoena pursuant to Rule 45."  *Bricker v. R&A

Pizza*, No. 2:10-cv-278, 2011 WL 3941982, at *3 (S.D. Ohio Sept. 6, 2011) (Kemp, M.J.)

(citing Fed. R. Civ. P. 45(a)(1)(A)(iii)).  Absent compliance, the Court lacks the power "to

issue any orders under Rule 45 relating to the proposed deposition."  *Id.* at *5.

In this case, Defendants did not issue notice or serve subpoenas—this fact is not in

dispute.  (Doc. No. 61, PageID 1264-65) (Doc. No. 63, PageID 1430).  Instead, Defendants

sought depositions of the individual employees through direct communication with Silfex,

---

[3] Silfex discusses the anticipated expenses that would have related to production of electronic communications that pre-date Fall 2019 due to the fact that such communications are stored on backup tapes. (Doc. No. 63, PageID 1425-26).  As part of this discussion, Silfex addresses the issue of cost-shifting.  *Id.*  However, Silfex does not expressly address the issue of cost-shifting in relation to compliance with the narrowed terms of the Subpoena—i.e., communications that post-date Fall 2019.  Defendants address this point only to clarify that, in accordance with the modified timeframe, cost-shifting for backup tape restoration to obtain documents prior to this time is irrelevant.  Thus, the undersigned declines to address the issue of cost-shifting at this time.

which proved to be unsuccessful.  (Doc. No. 61, PageID 1264-65).  Defendants argue, however, that they were not required to serve notices or subpoenas.  *Id.* at 1264.

Defendants cite to two cases in support of their position.  But, neither case is instructive here.  Take first for example, *Sandusky v. Mounsey*, No. 17-11784, 2018 WL 4358969, at *3-4 (E.D. Mich. Sept. 13, 2018).  In that case, the plaintiff sought to compel the defendant—rather than a non-party—to produce witnesses for depositions.  *Id.*  Aside from that key distinction, the plaintiff also had noticed the depositions and the defendant agreed to the depositions, scheduled them, and then unilaterally cancelled the scheduled depositions.  *Id.* at *4.  The situation was similar in *Faulkner v. Aero Fulfillment Services*, No. 1:19-cv-268, 2020 WL 6261698, at *1-2 (S.D. Ohio Oct. 23, 2020) (Bowman, M.J.) where the plaintiff sought to compel the defendant—rather than a non-party—to produce two current and two former employees for deposition.  The plaintiff had not issued notices or subpoenas, but this Court did not find that to be unreasonable as it is "customary to confer with opposing counsel prior to issuing such notices or subpoenas."  *Id.*  at *2.  The defendant was ordered to cooperate in scheduling the depositions of the defendant's current employees.  *Id.*  However, as to the defendant's former employees, the Court only ordered the defendant to provide the last known addresses for those individuals.  *Id.*  These cases are not analogous to the case at bar.  Defendants' assertions to the contrary fall short.

Attempting to overcome the dispositive issue of authority, Defendants assert that an order compelling Silfex to produce its employees for deposition would be in the interest of judicial efficiency.  Defendants believe that issuing a subpoena for the depositions of Silfex employees would be futile—and that Defendants will simply be back before the Court

17

again for resolution.  That may be true.  But, the interest of judicial efficiency is not a substitute for the Court's authority in this instance.  Accordingly, the Court declines to order Silfex to produce these employees for deposition absent notice and subpoena. However, the Court encourages Silfex's cooperation with Defendants upon such action.

## IT THEREFORE IS ORDERED THAT:

1.  Forefront's Motion for Protective Order, or in the Alternative, to Quash (Doc. No. 59) is DENIED; and

2.  Defendants' Motion to Compel and Local Rule 37.1 Certification (Doc. No. 61) is GRANTED in part and DENIED in part.

August 16, 2021

*s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge